IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WESLEY H.,[1]

Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 3:23-cv-00752-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Wesley H. ("Plaintiff") brings this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff was born in January 1990, making him thirty years old on November 23, 2020, the day he protectively filed his SSI application (and his amended alleged disability onset date).[2]

---

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which he filed his application[.]" *Schiller v. Colvin*, No. 1:12-cv-00771-AA, 2013 WL 3874044, at *1 n.1 (D. Or.

PAGE 2 – OPINION AND ORDER

(Tr. 35, 73.) Plaintiff is a high school graduate who has past relevant work experience as a photocopy machine operator. (*Id.* at 22, 304.) In his application for benefits, Plaintiff alleged disability due to "memory problems, diabetes, [and] reading and writing problems." (*Id.* at 73.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on November 17, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 79, 98, 139-153.) Plaintiff and a vocational expert ("VE") appeared by telephone and testified at an administrative hearing on April 14, 2022. (*Id.* at 29-68.) On May 17, 2022, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 13-28.)

On March 23, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-7.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if the claimant is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citing 20 C.F.R. § 404.1520). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment

---

July 23, 2013) (citation omitted). As a result, the ALJ considered whether Plaintiff was disabled as of November 23, 2020, the day he protectively filed his SSI application. (*See* Tr. 24, finding that Plaintiff has not been disabled "since November 23, 2020, the date the application was filed").

PAGE 3 – OPINION AND ORDER

meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id*. at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100 (citing 20 CFR § 404.1560(b)(3)). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

### III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 18-24.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 23, 2020, his amended alleged disability onset date. (*Id.* at 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "osteoarthritis, diabetes mellitus with retinopathy, [and] learning disorder." (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.*)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can stand or walk for a combined total of four hours, (2) Plaintiff can sit for six hours, (3) Plaintiff can occasionally climb ramps and stairs, and can never climb ladders, ropes, or scaffolds, (4) Plaintiff can occasionally

balance, kneel, crouch, crawl, and stoop, (5) Plaintiff is limited to simple, routine work in a workplace with no more than occasional workplace changes, and (6) Plaintiff should have no exposure to hazards. (*Id.* at 20.) At step four, the ALJ concluded that Plaintiff is able to perform his past relevant work as a photocopy machine operator. (*Id.* at 22-23.) Additionally, at step five, the ALJ determined that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a cashier II, marker, and routing clerk. (*Id.* at 23.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ committed harmful error by formulating an RFC that failed adequately to account for Plaintiff's limited ability to read. (Pl.'s Opening Br. ("Pl.'s Br.") at 4-9, ECF No. 10.) Plaintiff also argues the ALJ failed to give specific, clear, and convincing reasons for rejecting Plaintiff's testimony regarding the functional impact of his osteoarthritis and his need for a cane. (*Id.* at 9-13.)

As explained below, the Court concludes that the ALJ provided legally sufficient reasons for discounting Plaintiff's testimony about his osteoarthritis and need for a cane, but erred by failing to address in the RFC Plaintiff's limited ability to read. The Court therefore reverses the Commissioner's decision.

I.  **SUBJECTIVE SYMPTOM TESTIMONY**

   A.  **Applicable Law**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (simplified). Second, "[i]f the claimant meets the first test and there is no evidence of

PAGE 5 – OPINION AND ORDER

malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (simplified).

### B.  Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 20, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163.

#### 1.  Plaintiff's Reading Limitations

Plaintiff argues that the ALJ erred because the RFC failed to account for Plaintiff's limited ability to read. (Pl.'s Br. at 4-9.) The Court agrees.

The ALJ concluded that Plaintiff's learning disability was a severe impairment. (Tr. 18.) However, the ALJ's only mention of Plaintiff's limited ability to read was a summary of evidence discussing that Plaintiff was diagnosed with a learning disorder including an impairment in reading. (*Id.* at 20-21.) The ALJ never explicitly rejected Plaintiff's allegations about his reading limitations. *See Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021) ("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015))).

PAGE 6 – OPINION AND ORDER

The Commissioner points to the opinion of Robin Jewett, PA, who concluded that "in spite of having some difficulty with reading and math," Plaintiff has "average intelligence" and showed skills that "translate very well to occupational settings." (Def.'s Br. at 4, ECF No. 12, citing Tr. 1082.) Although the ALJ cited to PA Jewett's opinion that Plaintiff's "ability to understand, retain[,] and follow instructions was intact" (Tr. 22, citing Tr. 1082-83), the ALJ did not otherwise rely on PA Jewett's opinion to discount Plaintiff's testimony about his inability to read. (*Id.*) The Court may not affirm the ALJ's opinion for reasons not articulated in the opinion. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (holding that a reviewing court may not affirm an agency ruling for reasons not articulated by the agency).

Further, even if the ALJ had cited PA Jewett's opinion that Plaintiff has "average intelligence" and showed skills that "translate very well to occupational settings," those aspects of PA Jewett's opinion do not directly address Plaintiff's limited ability to read. On the contrary, PA Jewett acknowledged Plaintiff's "difficulty with reading and math" (Tr. 1082), but the ALJ did not include those limitations in Plaintiff's RFC. In addition, the reasons the ALJ listed for finding PA Jewett's opinion persuasive—Plaintiff's excellent vocabulary, no trouble following instructions, intact judgment, normal thought process, operating an insulin pump, and managing his household (*id.* at 22, citing Tr. 1081-83)—are not inconsistent with the record evidence of Plaintiff's limited ability to read.

Absent a legally supportable rejection of Plaintiff's allegations regarding his limited ability to read, the ALJ was required to accommodate his reading limitations in the RFC or explain why not. The ALJ erred by failing to do either.[3] Further, the ALJ's error was not

---

[3] At the hearing, Plaintiff's attorney asked the VE about literacy accommodations in the workplace, and the VE testified that "there's a lot of jobs where people are required to read, and they don't—aren't able to and generally the employer would work with the worker in that

PAGE 7 – OPINION AND ORDER

harmless, as the occupations the VE identified that Plaintiff could perform required reading at a rate of either 95-120 or 190-215 words per minute. (*See* Pl.'s Br. at 7, citing the Dictionary of Occupational Titles; *see also* Def.'s Br. at 3-4, arguing that the ALJ appropriately discounted Plaintiff's testimony about his reading limitations and not addressing the VE's testimony or the reading requirements for each occupation.)

Accordingly, the Court finds that the ALJ erred by failing to address in the RFC Plaintiff's limited ability to read.

### 2. Plaintiff's Osteoarthritis and Cane Use

Plaintiff also argues that the ALJ erred by failing to give specific, clear, and convincing reasons for discounting Plaintiff's allegations about the functional impacts of his osteoarthritis, including his need for a cane. (Pl.'s Br. at 9-13.) In discounting Plaintiff's subjective symptom testimony, the ALJ found that the record supports some limitations from osteoarthritis, but Plaintiff's "allegations concerning the degree of walking, sitting, and lifting limitations and need for a cane are not wholly consistent with the record." (Tr. 21.)

The ALJ acknowledged that Plaintiff experienced hip pain after walking for three to four hours, and that x-rays showed abnormally shaped femoral heads with increased sclerosis of the top of the acetabulum but without substantial joint space narrowing. (*Id.*, citing Tr. 619, 622.) The ALJ also acknowledged that Plaintiff reported physical therapy was not effective in

---

regard." (Tr. 67.) It is well settled that the Social Security Administration ("SSA"), "for SSDI purposes, . . . does *not* take the possibility of 'reasonable accommodation' into account[.]" *Cleveland v. Policy Mgmt. Sys. Corp.* 526 U.S. 795, 803 (1999) (explaining that "the SSA receives more than 2.5 million claims for disability benefits each year; its administrative resources are limited; the matter of 'reasonable accommodation' may turn on highly disputed workplace-specific matters; and an SSA misjudgment about that detailed, and often fact-specific matter would deprive a seriously disabled person of the critical financial support the statute seeks to provide").

PAGE 8 – OPINION AND ORDER

relieving his hip pain. (*Id.*, citing Tr. 1104.) However, the ALJ concluded that there "is no evidence the cane was prescribed or medically necessary[,]" and that other than being prescribed medication, there is no evidence of further treatment for his osteoarthritis. (*Id.*) The ALJ concluded that Plaintiff's "minimal treatment is inconsistent with the degree of limitations alleged." (*Id.*)

Plaintiff primarily takes issue with the ALJ's statement that there "is no evidence the cane was prescribed or medically necessary." (Pl.'s Br. at 11.) Plaintiff argues that his primary care provider, Vicki Swanson, FNP, described the cane as medically necessary. (*Id.* at 12, citing Tr. 1185.) Plaintiff further argues that "[t]he ALJ's bald assertion that the cane was not medically necessary was at odds with the evidence in the record." (*Id.*) Plaintiff emphasizes that there are multiple treatment notes in the record stating that Plaintiff used a cane to ambulate, experienced falls despite using a cane, and that he was often observed to walk with an antalgic gait. (*Id.* at 11-13, citing Tr. 610, 1079.)

The Social Security regulations provide that the use of a hand-held assistive device such as a cane is a functional limitation only if it is medically required. *See* SSR 96-9p, 1996 WL 374185, at *7 ("Medically required hand-held assistive device: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.");

PAGE 9 – OPINION AND ORDER

*see also Quintero v. Colvin*, No. 1:13-cv-00478-SKO, 2014 WL 4968269, at *10 (E.D. Cal. Sept. 29, 2014) ("The use of a cane or other 'hand-held assistive device' is probative of a claimant's functional limitations only if it is medically required."); *see also Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (finding that a physician's report indicating that a hand-held assistive device was "medically required for ambulation" and including a "'script' for a cane" did not establish medical necessity because the evidence "was insufficient to support a finding that his cane was medically necessary" under SSR 96-9p).

Plaintiff has not pointed to any evidence that describes the specific circumstances in which he is medically required to use a cane. FNP Swanson completed a treating source statement on April 1, 2022, and recommended that Plaintiff use a cane to ambulate "due to osteoarthritis of his hips." (Tr. 1185.) However, FNP Swanson also noted that imaging studies from February 2021 and July 2021 showed no osteoarthritis (*id.*), suggesting that FNP Swanson based her opinion on Plaintiff's subjective reports. When asked to describe the circumstances under which Plaintiff required a cane for ambulation, FNP Swanson stated that Plaintiff should use his cane "as needed for pain and ambulation." (*Id.*) However, FNP Swanson did not indicate the duration, distance, terrain, or any other relevant information with respect to Plaintiff's medically-required cane usage. (*See id.*)

Plaintiff is correct that the record includes several references to his use of a cane, but those references are all traceable to Plaintiff's self-reports and to his medical sources' observations that he presented with an assistive device. This evidence does not satisfy SSR 96-9p. *See Sou v. Saul*, 799 F. App'x 563, 564-65 (9th Cir. 2020) (holding that the plaintiff failed to demonstrate that a cane was medically required where the evidence "did not describe the circumstances for which a cane was needed"); *see also Downyell v. Kijakazi*, No. 2:20-cv-07312-

SP, 2022 WL 971335, at *3 (C.D. Cal. Mar. 31, 2022) (holding that a medical professional's opinion that the plaintiff "has to use a cane for ambulation" was insufficient because it did not indicate duration, distance, terrain, or any other relevant information, and therefore did not satisfy SSR 96-9p); *Dean N. v. Saul*, No. CV 18-09840-DFM, 2020 WL 430962, at *2 (C.D. Cal. Jan. 28, 2020) ("Plaintiff was required to establish both need and the specific circumstance in which he needs the cane before the ALJ could include the usage of a cane in his RFC."); *Flores v. Colvin*, No. 1:14-cv-02096-SKO, 2016 WL 2743228, at *14 (E.D. Cal. May 11, 2016) (holding that references to the plaintiff's cane traceable to his own self-reports and to his medical source's observations were insufficient to demonstrate medical necessity); *Cashin v. Astrue*, No. EDCV 09-161 JC, 2010 WL 749884, at *11 (C.D. Cal. Feb. 24, 2010) (holding that a doctor's observation of the plaintiff's use of a cane during an examination did "not constitute an objective finding that plaintiff's cane was medically required"); compare *Christa W. v. Kijakazi*, No. 1:22-cv-01293-SB, 2023 WL 6972455, at *2-4 (D. Or. Oct. 23, 2023) (including a cane limitation in the RFC where a medical opinion stated that "Plaintiff must use a cane when engaged in occasional standing and walking").

For these reasons, the Court concludes that the ALJ did not err in discounting Plaintiff's symptom testimony regarding his osteoarthritis and need for a cane.

///

///

///

///

///

///

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings consistent with this opinion.[4]

**IT IS SO ORDERED.**

DATED this 13th day of May, 2024.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[4] Plaintiff acknowledges that remanding for further proceedings—as opposed to remanding for an award of benefits—is the appropriate remedy here. (*See* Pl.'s Br. at 13-15; Pl.'s Reply Brief at 6-7, ECF No. 13.)